# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 22, 2013 at Knoxville

## STATE OF TENNESSEE v. JAMES SCOTT O'BRIEN

**Appeal from the Criminal Court for Robertson County**
**No. 2009-CR-595      Michael R. Jones, Judge**

---

**No. M2012-02397-CCA-R3-CD - Filed June 27, 2013**

---

The defendant, James Scott O'Brien, appeals the Robertson County Circuit Court's order that he serve in confinement nine months of the 30-month sentence imposed for his conviction of theft of property valued at $1,000 or more but less than $10,000.  Because the record supports the sentencing order, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Roger E. Nell, District Public Defender (on appeal); and Edward Swinger, Nashville, Tennessee (at trial), for the appellant, James Scott O'Brien.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant pleaded guilty to Class D felony theft, agreeing to a sentence of 30 months subject to the trial court's determining the manner of service of the sentence.

In the defendant's plea submission hearing, the prosecutor stated the factual basis for the guilty plea and the conviction:

> [I]n July of 2009 – previously [the defendant] had done some work for Trisha's Restaurant, and Ms. Trisha noticed a leak in her roof, and there was a warranty on the roof that [the

defendant] had given. And [the defendant] subsequently went and looked at the leak and indicated to Trisha's that it looked like some storm damage. [The defendant] contacted their insurance for them, arranged for the insurance company to come out and verify, and told them that the insurance company cut the check; he said it was just for supplies, and it was for $8,394.76, actually it was everything. But [the defendant] told Ms. Trisha that it was just for supplies.

At that time – on July 23rd the insurance company cut a check; made it out to [the defendant's] company and to M[s]. Trisha. [The defendant] went and got the check, took it to Ms. Trisha, had her sign the check, which she did, and then [the defendant] took the check. He then took the check and immediately – sometime shortly cashed it at . . . Tony's CB in Joelton, which is not a bank but does checks for individuals when checks are on business or insurance account or so forth. That check we know was cashed before July 8th, that's when it cleared the bank, 2009.

[The defendant] subsequently did not go back to Trisha's, did not do any work, did not supply her with any supplies or anything of that nature, and when she kept calling he kept giving excuses, well, the supplies aren't in and so forth. Finally in – three months later, near October of '09, she finally got him to come, because the leak was getting worse, and all he – he did not bring any supplies, basically went and scraped off the roof and made it even worse, and then she never heard from him again. So shortly – basically, Your Honor, he took $8,394 just took it and did not do everything that he promised.

In the sentencing hearing, Trisha Templeton testified that she operated a café across the street from the courthouse in Clarksville. She testified that the defendant had previously performed roofing work on her building that remained under a five-year warranty when she started experiencing leaking in 2009. She testified that the defendant told her that the problem resulted from storm damage not covered by the warranty. The defendant showed the roof to Ms. Templeton's insurance adjuster. Afterward, the defendant told Ms. Templeton that she was getting "a whole new roof." She did not again see the adjuster.

Ms. Templeton testified that within a week or so the defendant informed her

that he would bring her a check for supplies and that she would be getting another payment for the labor. She said he brought the check, and she endorsed it. She did not see the defendant again for about a month during which the leak worsened and caused her difficulty with the health inspector. Eventually, the defendant came to the café but brought no materials other than a tarp.

The defendant placed the tarp on the roof but did nothing else. Ms. Templeton testified that he did not return despite her persistent efforts to get him to do so. The leaking became more egregious, causing pest infestation and mold. After Ms. Templeton became more forceful, the defendant returned to the café with "three guys." She said, "They tore off the whole front half of my building, the roof, strip[p]ed it to the plywood and left it there and never came back." She testified that no materials were ever delivered. She remarked that, when it next rained, she "had customers in [the café] and water was dripping on them."

Ms. Templeton then learned from her insurance company that the check she endorsed was for the entire repair costs, including labor, and was not intended to replace the roof. She had another roofer repair her roof but testified that residual damage to the old building remained.

Ms. Templeton testified that her income was affected whenever it rained and that the problem caused her to be "stressed out all the time." She said her building "used to look nice, and it doesn't really anymore for certain reasons, but you know, it's – it's definitely taken a lot of the trust away that [she] had in people."

The 48-year-old defendant testified that he was "very sorry for doing what [he] done [sic]." He said that although his construction business was "very good . . . at one time," at the time of the offense, he was "going through a lot of hard times with [his] wife and filing bankruptcy, and [his] whole world come down." He expressed a desire for "another chance." He admitted taking the insurance money, "[u]sing cocaine," and that he was on probation in two different cases in Nashville with a remaining effective probationary term of six years in those cases. He testified he was paying restitution in the Nashville cases and was current in his payments.

The defendant stated that he was prepared to pay $2,000 on the day of the sentencing hearing toward his restitution in the present case and that he was prepared to pay the remaining $6,400 over time. He testified that he planned to work at his parents' restaurant in Joelton. Although the restaurant served alcohol, he stated that he had never had a problem with alcohol. He said that he no longer used drugs and was "clean."

The defendant testified that he had two sons and a daughter. He testified that

he had spent about 90 days in jail.

On cross-examination, the defendant admitted that between the ages of 21 and 26, he committed six property crimes. He said these offenses were due to his use of drugs. He stated that he refrained from drugs for several years, but after an illness and the resulting use of prescription drugs, his drug problem returned circa 2006. He said that the economy, the bankruptcy, and the divorce basically put him into a tailspin.

The defendant admitted that a suspended sentence in Robertson County had been revoked.

Chessy Scott, the defendant's mother, testified that the defendant had been living at her house before he went to jail and that he would continue to reside there if he were placed on probation. She described her restaurant as a "profitable little business."

Ms. Scott testified that the defendant has "a big heart" but got on the "wrong track." She said the defendant was once "pretty successful" and had "a nice home." She said the defendant was good to his children. She testified that the $2,000 on hand for paying restitution was money the defendant had earned at her restaurant. She indicated that she would be in a good position to monitor the defendant's abstinence from drugs.

The presentence report, which was exhibited to the sentencing hearing, showed that the defendant garnered the following convictions:

| | | |
|---|---|---|
| 1986 | Sumner County | Receiving property under false pretenses (misdemeanor) |
| 1988 | Davidson County | Receiving stolen property (misdemeanor) |
| 1988 | Davidson County | Obtaining property by false pretense (misdemeanor) |
| 1989 | Bay County (Fla.) | Grand larceny (felony) |
| 1991 | Davidson County | Shoplifting (misdemeanor) |
| 1992 | Davidson County | Theft (felony) |
| 2011 | Robertson County | Worthless check (misdemeanor) |
| 2011 | Robertson County | Failure to appear (misdemeanor) |
| 2012 | Davidson County | Theft (felony). |

Most of the convictions resulted in suspended sentences. The report further stated that "the defendant was classified as an absconder offender from 12/22/1993 thru 9/28/2010. During this time he had an active probation sentence in Davidson County which was unable to be

supervised due to his absence."

Following the argument of counsel in the sentencing hearing, the trial court addressed whether a sentencing alternative to confinement should be afforded the defendant. The trial judge opined that "confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct." *See* T.C.A. § 40-35-103(A). The court also determined that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." *See* T.C.A. § 40-35-103(C). The court noted that the defendant's probation in Robertson County was revoked.

The court ordered the defendant to serve his 30-month sentence in split confinement – nine months in confinement and the balance on probation. *See* T.C.A. § 40-35-306(a) ("A defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse, with probation for a period of time up to and including the statutory maximum time for the class of the conviction offense."). On appeal, the defendant posits that the trial court erred in ordering him to serve nine months in confinement.

"[A]lthough the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Observing that a change in our standard of review was necessary to comport with the holdings of the United States Supreme Court, our supreme court "adopt[ed] an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.*

Despite the new standard of review, trial court's must still consider the principles of sentencing enumerated in Code section 40-35-210(b), *see Bise*, 380 S.W.3d at 698 n.33 (citing T.C.A. § 40-35-210(b)), 706 n.41, and must, as required by statute, consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5). The court cautioned that, despite the wide discretion afforded the trial court under the revised Sentencing Act, trial courts are "still required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* at 706 n.41 (citing T.C.A. § 40-35-210(e)).

The supreme court expanded the holding in *Bise* to the trial court's decision regarding alternative sentencing and probation eligibility in *State v. Caudle*, ruling "that the

abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Given the defendant's conviction history and his recent probation revocation, we cannot say that the trial court abused its discretion by ordering split confinement with a nine-month confinement component. We are confident that, if the defendant is sincere and determined in his claims of reform and his commitment to making Ms. Templeton whole, he will emerge from the confinement term to successfully complete the probation term, but we see no basis for overturning the discretionary decision of the trial court.

Therefore, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE